UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

**JENNIFER WALLENSTEIN,**
 Plaintiff,

v.

**STOPWATCH URGENT CARE CENTERS, INC.,**
 Defendant.

Case No. 4:23-cv-300-CLM

## MEMORANDUM OPINION AND ORDER

 Jennifer Wallenstein sues her former employer, Rock Oak Group Services, Inc.[1], for age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), violations of the Fair Labor Standards Act ("FLSA"), and disability discrimination and retaliation in violation of the Rehabilitation Act. (Doc. 1). Rock Oak seeks dismissal of Wallenstein's age and disability discrimination claims. (Doc. 9). For the reasons stated within, the court **GRANTS IN PART** and **DENIES IN PART** Rock Oak's motion to dismiss (doc. 9).

### STATEMENT OF THE ALLEGED FACTS

 Wallenstein, who is over the age of 40, began working for Rock Oak in January 2021 as a medical assistant. (Doc. 1 ¶¶ 14–15). Wallenstein suffers from several disabilities, including a neurological disorder, ADHD, and diabetes that limit her ability to think, move, lift, bend, twist, push, pull, work, and stand. (*Id.* ¶¶ 16, 56). Rock Oak knew of Wallenstein's disabling conditions because she didn't conceal them and discussed them with Rock Oak many times. (*Id.* ¶ 18).

---

[1] Rock Oak is a management company that employs all staff at Stopwatch Urgent Care Clinics. According to Rock Oak, Stopwatch Urgent Care Centers is a brand name and has no employees, so Wallenstein incorrectly identified Stopwatch as the Defendant in her complaint. Wallenstein "has no reason to dispute this assertion." (Doc. 15 at 1 n.1). For ease of reference, the court will refer to the Defendant as Rock Oak throughout this memorandum opinion and order.

Office protocol was for two medical assistants to work each 12-hour shift. (*Id.* ¶ 20). But the second medical assistant on Wallenstein's shift quit about a month after Wallenstein started working for Rock Oak. (*Id.*). As a result, Wallenstein was forced to work by herself for months, while the two other medical assistants, who were both under 40 and not disabled, continued to work the other 12-hour shift together. (*Id.* ¶ 21).

Wallenstein complained to clinal manager Olivia Brown about her overwhelming workflow as the only medical assistant on her shift and that she was being treated differently than the other younger and non-disabled assistants. (*Id.* ¶ 23). Brown, who would make condescending or sarcastic comments to Wallenstein, commented on how the other medical assistants could work their shifts solo. (*Id.* ¶ 24). Brown also questioned if Wallenstein was a good fit for the job and asked if Wallenstein had considered quitting. (*Id.* ¶ 25).

Wallenstein asked Brown and the human resources managers about whether they could hire another medical assistant to assist Wallenstein on her shift. (*Id.* ¶ 26). Brown responded by commenting "all the others could do it, maybe the job isn't for you." (*Id.* ¶ 27). Wallenstein asked to speak to the COO, Mark Morgan, and though assistant manager, Bridget Byers emailed Morgan, Wallenstein received no response. (*Id.* ¶ 28).

Provider Tracy Hackett emailed Morgan to report how Wallenstein allegedly often forgot to write her triage notes. (*Id.* ¶ 29). Hackett knew about Wallenstein's ADHD and diabetes and would often comment in a condescending manner about how Wallenstein "deserved a gold star" if she did not make any mistakes at work for the day. (*Id.* ¶ 30).

In May 2021, Brown called Wallenstein to berate her and terminate her employment by telling her "it was no longer working out, and you are not cut out for [this work]." (*Id.* ¶ 31). Rock Oak then hired Youn Fong, a young woman in her twenties with no experience and who did not have any disabilities, to replace Wallenstein. (*Id.* ¶ 34). So after Wallenstein's termination, all three medical assistants were in their early twenties and did not have disabilities. (*Id.* ¶ 35).

**STANDARD OF REVIEW**

In reviewing a Rule 12 motion, this court accepts the allegations in Wallenstein's complaint as true and construes them in the light most favorable to Wallenstein. *See Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012). The ultimate question is whether Wallenstein's allegations, when accepted as true, "plausibly give rise to an entitlement of relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). If the facts as pleaded could entitle Wallenstein to relief, then the court must deny Rock Oak's motion to dismiss. If, however, the court accepts all of Wallenstein's pleaded facts as true, and Wallenstein still would not be entitled to relief, then the court must grant the motion.

**DISCUSSION**

Rock Oak moves to dismiss Wallenstein's age discrimination claim (Count One) and disability discrimination claim (Count Three). A complaint alleging employment discrimination needn't include facts that establish a prima facie case of discrimination under the *McDonnell Douglas* framework to state a claim for relief. *See Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015). Instead, the "complaint need only provide enough factual matter (taken as true) to suggest intentional . . . discrimination." *Id.* (quotations omitted). So "when the well-pleaded factual allegations of a complaint plausibly suggest that the plaintiff suffered an adverse employment action due to intentional . . . discrimination," the complaint will survive a Rule 12 motion. *See id.*

### A. Age Discrimination (Count One)

The ADEA prohibits employers from discriminating against employees who are at least 40 because of their age. *See* 29 U.S.C. §§ 623(a)(1), 631(a). To succeed at trial on her age discrimination claim, Wallenstein will need to prove that age was the "but-for" cause of an adverse employment decision. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009).

Rock Oak says that the court should dismiss Wallenstein's age discrimination claim for two reasons. First, Wallenstein being required to work a shift alone, receiving criticism, and having a provider email Morgan

that she often forgot to write triage notes aren't adverse employment actions. Second, Wallenstein hasn't plausibly alleged that Rock Oak terminated her because of her age.

Wallenstein concedes that the only adverse employment action that she has alleged is her termination. The court agrees that none of the other actions that Wallenstein describes amount to an adverse employment action. *See Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (2001) (To establish an adverse employment action in the discrimination context, a plaintiff "must show a *serious and material* change in the terms, conditions, or privileges of employment." (emphasis in original)), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). So to the extent that Wallenstein's complaint could be construed as bringing an age discrimination claim based on any act other than the termination of Wallenstein's employment, the court will dismiss those claims.

As for Rock Oak's argument that Wallenstein hasn't plausibly alleged that her firing was because of her age, Wallenstein has alleged that she was over 40 and replaced by someone in her early 20s. In fact, once Wallenstein was fired, all the medical assistants were in their 20s. Plus, during Wallenstein's employment, Rock Oak treated the younger medical assistants better than Wallenstein by not requiring them to work shifts alone. Despite requiring Wallenstein to shoulder this heavier workload, the reason Rock Oak gave for firing Wallenstein was that she was "not cut out for [this work]." (Doc. 1 ¶ 31). Accepting these allegations as true and viewing the facts in a light most favorable to Wallenstein, the court finds that Wallenstein has plausibly alleged that Rock Oak preferred younger medical assistants and that the rationale for her firing was pretext for age discrimination. So the court will deny Rock Oak's motion to dismiss Wallenstein's age discrimination claim based on her firing.

### B.     Disability Discrimination (Count Three)

To state a disability discrimination claim, a plaintiff must allege that she was a "qualified individual" who suffered an adverse employment action because of her disability. *See Equal Emp. Opportunity Commission v. STME, LLC*, 938 F.3d 1305, 1314 (11th Cir. 2019); *see also Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) ("[U]nder the Rehabilitation Act, a plaintiff must prove that he suffered an adverse employment action 'solely by reason of' his handicap.").[2]

Rock Oak once again asserts that the only adverse employment action described in Wallenstein's complaint is the termination of her employment and that Wallenstein hasn't plausibly alleged that her disability was the "but-for" reason for her firing. As explained, the court agrees with Rock Oak that the only adverse employment action that Wallenstein has alleged is the termination of her employment. So to the extent that Wallenstein's complaint could be read as bringing a disability discrimination claim based on any act other than Wallenstein's firing, the court will dismiss those claims.

As for Wallenstein's claim that Rock Oak fired her because of her disability, Rock Oak doesn't dispute that Wallenstein has adequately alleged that she is disabled and qualified for her position as a medical assistant. And though Rock Oak asserts that Wallenstein failed to plausibly allege that her disability (rather than dissatisfaction with her job performance) is what led to Wallenstein's firing, the court disagrees. Wallenstein asserts that Rock Oak replaced her with a non-disabled medical assistant. And throughout Wallenstein's employment with Rock Oak, the other, non-disabled medical assistants were treated more favorably than Wallenstein because they weren't required to work shifts alone. Despite not requiring the non-disabled medical assistants to work solo shifts, Brown repeatedly asked Wallenstein why she couldn't work solo shifts like her non-disabled colleagues. Finally, though requiring Wallenstein to shoulder a heavier workload than her non-disabled colleagues, the reason Brown gave for Wallenstein's firing was that she was "not cut out for [this work]." (Doc. 1 ¶ 31).

---

[2] The disability discrimination claim in *STME* was brought under the Americans with Disabilities Act ("ADA"), which has the same standard for liability as the Rehabilitation Act. *See Sutton v. Lader*, 185 F.3d 1203, 1207 n.5 (11th Cir. 1999).

A reasonable person could infer from these allegations that Wallenstein's disability was the real reason for her firing.[3] So the court will deny Rock Oak's motion to dismiss Wallenstein's disability discrimination claim based on the termination of her employment.

## CONCLUSION

For these reasons, the court **GRANTS IN PART** and **DENIES IN PART** Rock Oak's partial motion to dismiss (doc. 9). Wallenstein's age discrimination and disability discrimination claims are limited to her claims that Rock Oak fired her because of her age or disability. The court **GRANTS** Rock Oak's motion for extension of time to answer the complaint. Rock Oak has until on or before **January 31, 2024,** to answer Wallenstein's complaint.

**DONE** and **ORDERED** on January 17, 2024

*[signature]*

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE

---

[3] "Rule 8(d) of the Federal Rules of Civil Procedure expressly permits the pleading of alternative and inconsistent claims." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1273 (11th Cir. 2009). So Wallenstein's allegations in Count One that Rock Oak fired her because of her age don't preclude her allegations in Count Three that Rock Oak fired her because of her disability.